S99G0931. TYLER et al. v. LINCOLN et al.
(527 SE2d 180)

HINES, Justice.

We granted certiorari to the Court of Appeals to consider its determination to affirm the trial court's grant of summary judgment to the defendant land developers on the plaintiff landowners' claims for punitive damages and attorney fees. The litigation was brought for alleged damages to plaintiffs' land and ponds from excessive storm water and sediment discharge caused by the development of the adjacent subdivision. *Tyler v. Lincoln*, 236 Ga. App. 850 (513 SE2d 6) (1999). Finding that the Court of Appeals erred in affirming summary judgment on the claims for punitive damages and attorney fees, we reverse.

The Court of Appeals found the following: Mr. and Mrs. Tyler acquired 11.8 acres of land in Lowndes County. There was a cypress pond at the rear of the tract, immediately adjacent to a Norfolk Southern railroad track. The Tylers located their residence near the front of the parcel and also built two additional ponds, one of which was used for fishing. The two ponds were connected to the existing cypress pond by a drainage ditch.

About five years later, developers Steve Lincoln and Lincoln Realty began constructing a subdivision on land located on the other side of the railroad track. There is a natural flow of water from the subdivision onto the Tylers' property which is managed by a 24-inch culvert draining from underneath the railroad track into the cypress pond. About two years after the subdivision construction began, the Tylers started complaining to the county about excess storm water and sediment discharge from the subdivision. The county, which had approved the subdivision's drainage plans, refused to take any action unless the Tylers submitted documentation prepared by a registered engineer to support their claims, but the documentation was not provided. However, the following year, Norfolk Southern wrote the county engineer that the calculation of pre-development and post-development runoff coefficients in the subdivision plans indicated a 41 percent increase in post-development storm water runoff onto adjacent property. Norfolk Southern asserted that the existing culvert was an inadequate containment device and that the increased runoff would damage its railroad and the Tylers' property; it suggested that the county require the developers to construct a deten-

tion pond within the subdivision.

A county soil erosion control specialist determined there had been a very minimal amount of sediment deposits from the subdivision onto the Tylers' property and none in their ponds. A committee from the Georgia Soil & Water Conservation Commission found that erosion and sediment control structures in the subdivision were inadequately maintained in certain areas and absent in others, but that there was no sedimentation on the Tylers' property and therefore no significant sediment damage. State environmental personnel found no evidence that contaminated water was being discharged onto the property, that subdivision sediments detrimentally impacted the property, or that the subdivision was impacting the two ponds.

However, Mr. Tyler's affidavit, deposition and other testimony was that heavy rains deluge his property with excessive storm water runoff from the subdivision, resulting in the deposit of an undetermined amount of sediment onto the Tylers' land and into their ponds; the ponds were clear prior to development of the subdivision; they are now so polluted they cannot be used for recreational or aesthetic purposes; algae has formed in the front ponds making fishing impossible; excessive storm water runoff from the subdivision resulted in flooding, depicted in photographs of record; he repeatedly asked the subdivision developers to correct the problems to no avail; and at the time of his deposition, he had not attempted to calculate his damages.

The Tylers' expert affirmed that some sedimentation had been discharged from the subdivision into the cypress pond, attributable to inadequate soil erosion control measures within the subdivision, and that more water was now being discharged into the Tylers' ponds than before the subdivision was developed. The Tylers also submitted photographs from which a jury could find inadequate erosion and/or sediment control measures in the subdivision, flooding of the Tylers' property, and excessive turbidity and discoloration in their ponds.

The engineer who designed the subdivision drainage plans acknowledged the 41 percent increase in the runoff coefficients, which he had calculated would increase the total volume of surface water runoff, but he had concluded that subdivision wetlands would adequately contain the additional runoff.

A county ordinance prohibited a drainage system from effecting a net increase of water flow onto adjacent property unless the owner agreed to the proposed drainage design, and all drainage systems discharging water into a creek, stream, or natural body of water including wetlands had to pass through an approved sedimentation or detention pond prior to discharge. Because the subdivision engineer determined that there would be no net increase of water onto

adjacent property, the developers did not obtain the Tylers' agreement to the drainage system.

After these findings, the Court of Appeals reversed the trial court's grant of summary judgment to the developers on the Tylers' nuisance, trespass, and negligence claims. The Court found that it appeared that the developers violated the county ordinance by failing to construct a sedimentation or detention pond to control the flow of surface water from the subdivision into the wetlands on their property and the Tylers' cypress pond; it further found that there were unresolved issues about whether the developers were then in violation of Georgia's Erosion & Sedimentation Act, OCGA § 12-7-1 et seq. However, the Court of Appeals affirmed the trial court's grant of summary judgment to the developers on the Tylers' claims for punitive damages under OCGA § 51-12-5.1 (b) and attorney fees under OCGA § 13-6-11.[1]

1. The Court of Appeals erred in upholding the award of summary judgment regarding punitive damages after finding circumstances raising material issues of fact about the Tylers' claims of trespass and nuisance.

Punitive damages may be awarded in tort actions in which clear and convincing evidence proves that a defendant's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1.[2] A conscious indifference to consequences relates to an intentional disregard of the rights of another. *Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga. App. 27, 31 (2) (514 SE2d 836) (1999). "Wilful and intentional *misconduct* is not essential." (Emphasis supplied.) *Hoffman v. Wells*, 260 Ga. 588 (1) (397 SE2d 696) (1990).

But a trespass is an intentional act. *Moody v. Dykes*, 269 Ga. 217, 221 (4) (496 SE2d 907) (1998); *KDS Properties v. Sims*, 234 Ga. App. 395, 398 (3) (506 SE2d 903) (1998). Thus, a wilful repetition of a trespass will authorize a claim for punitive damages. *Teague v. York*, 203 Ga. App. 24, 25 (2) (416 SE2d 356) (1992). So too, will a claim of continuing nuisance. *CSX Transp. v. West*, 240 Ga. App. 209, 210 (2) (523 SE2d 63) (1999). And specifically, the failure to adequately ameliorate the runoff of water and silt onto another's property has been held to justify a punitive damage award. *Ponce De Leon Condomini-*

---

[1] The Court of Appeals also affirmed summary judgment to the developers on the plaintiffs' claim for violation of their riparian rights; however, such claim is not at issue in this appeal.

[2] The circumstances found by the Court of Appeals suggest questions of fact about a continuing trespass and/or a continuing nuisance; therefore, present OCGA § 51-12-5.1 applies.

*ums v. DiGirolamo*, 238 Ga. 188 (232 SE2d 62) (1977).

Certainly, there are situations in which damage from the flow and drainage of water and sediment would not warrant punitive damages. In *General Refractories Co. v. Rogers*, 240 Ga. 228, 230 (1) (239 SE2d 795) (1977), this Court disapproved a punitive damage award because it found no "clear acts" on the part of the defendant which would support "wilful or wanton conduct, malice, oppression, conduct exemplifying conscious indifference to consequences or a succession of tortious acts." Id. at 234 (1). There was no evidence of activity on the defendant's part to cause water to be accumulated in quantities or diverted unnaturally; the plaintiff did not notify the defendant of the complained of activities from the inception; the defendant did not refuse to take action; and there was not a lack of effort on the defendant's part to lessen the quantity of diverted water. Id. at 233 (1). Similarly, in *Payne v. Carson*, 215 Ga. App. 253 (450 SE2d 273) (1994), the Court of Appeals found that the evidence did not support punitive damages because, inter alia, another party was responsible for the actual increase in surface water runoff, and the defendant at issue suffered the same damage to his property from the surface water. Id. at 255 (1). But, in this case, the Tylers presented evidence of excessive storm water runoff and sediment deposit, flooding of their property, and pollution of their ponds directly from development of the subdivision; that the developers had not taken adequate soil erosion control measures within the subdivision; that the subdivision drainage system was designed in a manner that would increase the runoff of storm water onto their property; and that they repeatedly asked the subdivision developers to correct the problems, but failed to get them to take any action to remedy the situation and the ongoing damage. What is more, the Tylers presented evidence raising questions about the developers' violations of a county ordinance and state law. The fact that the Tylers may not have produced, on summary judgment, evidence of the specific amount of damage sustained, was not fatal to their causes of action for trespass and nuisance. *C & S Trust Co. v. Phillips Petroleum Co.*, 192 Ga. App. 499, 501 (5) (385 SE2d 426) (1989). And punitive damages may be awarded even when actual damages are small. *McClure v. Gower*, 259 Ga. 678, 684 (4) (385 SE2d 271) (1989). Thus, there are material questions of fact regarding the Tylers' allegations of trespass and nuisance, and evidence of acts by the defendant developers which could allow a jury to consider a claim for punitive damages.

2. The Court of Appeals likewise erred in affirming the trial court's grant of summary judgment to the developers on the Tylers' request for attorney fees under OCGA § 13-6-11. The statute authorizes an attorney fee award even when nominal damages are recovered. *Savannah College of Art & Design v. Nulph*, 265 Ga. 662, 663

(4) (460 SE2d 792) (1995). And " '[e]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees.' " *Ponce de Leon Condominiums v. DiGirolamo*, supra at 190 (2), quoting *DeKalb County v. McFarland*, 231 Ga. 649, 651 (203 SE2d 495) (1974). Moreover, generally the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case. *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997). Inasmuch as the Court of Appeals determined that the question of the developers' commission of an intentional tort remained for the jury to consider, "the claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury." Id. at 878 (4).

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 28, 2000.

*Stack & Associates, Donald D. J. Stack*, for appellants.
*Newman, Sapp & Davis, David A. Sapp*, for appellees.