## A00A0225. E-Z SERVE CONVENIENCE STORES, INC. v. CROWELL.
### (535 SE2d 16)

BLACKBURN, Presiding Judge.

Following a jury trial, E-Z Serve Convenience Stores, Inc. appeals the verdict against it and in favor of an ex-employee, Jimmie Davis Crowell, for $350,000 in compensatory damages and $350,000 in punitive damages. E-Z Serve contends that (1) the trial court erred by allowing Crowell's claims for infliction of emotional distress, fraud, and punitive damages to go to the jury and (2) that the jury's verdict was excessive. For the reasons set forth below, we affirm.

1. E-Z Serve contends that the trial court should have granted its motions for a directed verdict on the issues of emotional distress, fraud, and punitive damages.

> The standard of review of a trial court's denial of a motion for a directed verdict is the any evidence standard, and the evidence is construed most favorably toward the party opposing the motion. Accordingly, this standard of review requires [E-Z Serve] to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought.

(Citation and punctuation omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 854 (501 SE2d 30) (1998).

Construing the evidence most favorably to Crowell, as we must, the record shows that, on February 18, 1997, Crowell, in his capacity as a manager of an E-Z Serve store on Camp Creek Parkway, was issued a citation by the City of East Point for violation of a city ordinance imposing a fine on entities whose alarm systems exceeded a set number of false alarms.[1] Although E-Z Serve had previously been notified that it owed fines for violation of this ordinance, and Crowell had passed these notifications on to his supervisor, Louis Cain, on at least three occasions, the fines were not paid.[2] The citation issued to E-Z Serve indicated that the charges regarding the false alarms would have to be answered in court on April 28, 1997, unless the

---

[1] According to the city ordinance, a $50 fine was imposed on an organization for the second false alarm it received, and each consecutive false alarm would increase the fine by $50. False alarm reports were issued to the Camp Creek Parkway store on July 19, 1996, August 27, 1996, September 8, 1996, November 3, 1996, January 11, 1997, January 23, 1997, and March 6, 1997.

[2] These notifications were placed in envelopes set aside for important correspondence and sent to Cain, as Cain had instructed. Cain, however, admitted that he did not look at all the documents he received.

accompanying fines had been paid.

On the day that Crowell received and signed the citation in his managerial capacity, he gave it to Cain. Crowell explained to Cain that the officer who delivered the citation told him that the fines needed to be paid, and Cain replied: "I'll take care of it. I'll handle it. Don't worry about it." Shortly thereafter, on February 21, 1997, Crowell was transferred to another store in Jonesboro, and his duties with the Camp Creek Parkway store ended. Crowell later terminated his employment with E-Z Serve and began working for another company on April 28, 1997.

E-Z Serve failed to pay the fines levied against it which resulted in the issuance of the February 18 citation, and no representative of the company showed up in court to answer the charges. As a result of this failure to appear, a bench warrant was issued for Crowell's arrest because he had signed the false alarm citation. On the evening of August 8, 1997, police officers responded to a domestic call at Crowell's home and, after running a routine check of his license, discovered the existence of the outstanding warrant. Crowell was then arrested, handcuffed, and taken to jail where he was ultimately detained for over 24 hours.

Once at the jail, Crowell called the Camp Creek Parkway store and asked the employee on duty, Belle Strickland, to call Cain so that he could post bail and clear up the matter. Strickland left a message for Cain which he received the following morning. Cain then called John Marshal, the manager of a store near the jail, and asked him to find out what was happening to Crowell. Marshal reported that Crowell was being held for the false alarm charge. After receiving this notice, Cain called his supervisor, Brad Williams, who, in turn called Ed Lambert, vice-president and corporate counsel for E-Z Serve. Williams then called Cain back and instructed him to have the false alarm fines paid. After discovering that the fines could not simply be paid at that point, no one from E-Z Serve took any action to assist Crowell. On the evening of the following day, Crowell got in touch with his child's grandmother who came to the jail and posted bail.

After getting out of jail, Crowell received a notice from the Department of Public Safety that his license had been suspended for failure to pay fines on the false alarm charge. Crowell then retained an attorney to represent him at a hearing regarding the citations on October 16, 1997. At this hearing, the judge determined that, because he signed the citation, Crowell had to pay a fine for failing to appear in court on April 28, 1997, although he was not ultimately responsible for the false alarm charge. In addition, Crowell was required to pay a separate fine to have his license reinstated. Crowell's license was subsequently reinstated on November 10, 1997.

It is undisputed that Crowell had no obligation or authority to ensure that E-Z Serve paid its bills and other obligations. His only responsibility was to pass the notice of such obligations along to his supervisor.

(a) E-Z Serve contends that the trial court erred by denying its motion for directed verdict regarding Crowell's claim for intentional infliction of emotional distress. We disagree.

> [W]hen the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury. *Tuggle v. Wilson*, 248 Ga. 335, 337 (282 SE2d 110) (1981). That principle has its corollary in this: reckless and wanton disregard of consequences may evince an intention to inflict injury. *Carr v. Woodside Storage Co.*, 217 Ga. 438, 443 (1) (123 SE2d 261) (1961). "(I)t is equally well established that for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom." *Pollard v. Phelps*, 56 Ga. App. 408 (1) (193 SE 102) (1937), quoted with approval in *McCoy v. Ga. Baptist Hospital*, 167 Ga. App. 495, 498 (306 SE2d 746) (1983).

*Hamilton v. Powell, Goldstein, Frazer &c.*, 252 Ga. 149, 150 (311 SE2d 818) (1984). "[T]hat entire want of care which would raise the presumption of a conscious indifference to consequences . . . relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Gilman Paper Co. v. James*, 235 Ga. 348, 351 (219 SE2d 447) (1975); accord *Bowen v. Waters*, 170 Ga. App. 65, 67 (2) (316 SE2d 497) (1984); *Skil Corp. v. Lugsdin*, 168 Ga. App. 754, 755 (1) (309 SE2d 921) (1983).

In this case, there is some evidence that E-Z Serve showed a conscious indifference toward Crowell which precipitated his injuries. After being informed of the false alarm citation, Cain warranted to Crowell that he would take care of it; however, he did nothing to ensure that the fines were paid. Then, after he had been informed that Crowell had been arrested as a result of the false alarm charge, neither he nor any other employee of E-Z Serve acted to assist Crowell in getting out of jail. Accordingly, the issue of E-Z Serve's intentional infliction of emotional distress was properly sent to the jury for determination.

E-Z Serve also contends that the jury was allowed to consider a claim for the negligent infliction of emotional distress, despite the fact that it is not a viable cause of action in Georgia. The record, however, shows that this contention is wholly without merit. In the clos-

ing charge to the jury, the trial court explicitly stated: "There is no recognizable cause of action in this state for negligent infliction of emotional distress."

(b) E-Z Serve contends that the trial court erred by denying its motion for directed verdict regarding Crowell's claim that he was defrauded.

"Except in plain and indisputable cases, [however,] questions of fraud and whether a plaintiff could have protected himself through the exercise of ordinary diligence are questions for a jury. [Cit.]" *Lester v. Bird*, 200 Ga. App. 335, 338 (1) (408 SE2d 147) (1991). An actionable claim of fraud exists when: (1) the defendant makes a representation, (2) with the knowledge it was false, (3) with the intention to deceive the plaintiff; (4) the plaintiff reasonably relies upon the representation by the defendant; and (5) the plaintiff suffers a loss as a proximate result of the representation. *Simpson Consulting v. Barclays Bank*, 227 Ga. App. 648, 650 (1) (490 SE2d 184) (1997).

Fraud, though, does not have to be committed solely by wilful misrepresentation. Instead, it "is subtle and can be accomplished in an infinite number of ways including signs and tricks and even, in some instances, by silence. [Cits.]" *Stanford v. Otto Niederer & Sons, Inc.*, 178 Ga. App. 56, 57-58 (1) (341 SE2d 892) (1986). Here, due to Cain's history of ignoring false alarm notifications, the jury could have concluded that, at the time he informed Crowell that he would take care of the citation, he had no real intention to do so. Accordingly, the issue of fraud was properly sent to the jury.

(c) E-Z Serve contends that the trial court erred by denying its motion for a directed verdict on Crowell's claim for punitive damages.

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. OCGA § 51-12-5.1 (b). "(Conscious indifference to consequences) relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." (Punctuation omitted.) *John H. Smith, Inc. v. Teveit*, 175 Ga. App. 565, 568 (1) (b) (333 SE2d 856) (1985). "(R)ecovery of punitive damages may be authorized where the circumstances of the tort show an entire want of care and an indifference to consequences. Wilful and intentional misconduct is not essential." *Hoffman v. Wells*, 260 Ga. 588 (1) (397 SE2d 696) (1990).

*CSX Transp. v. West*, 240 Ga. App. 209, 210 (2) (523 SE2d 63) (1999).

As discussed in Division 1 (a), the evidence supports a finding that E-Z Serve acted with reckless disregard of Crowell's welfare by allowing him to sit in jail as a result of E-Z Serve's failure to pay its own charge for false alarms. Therefore, the jury in this case appropriately considered the issue of punitive damages.

2. Finally, E-Z Serve contends that the jury's verdict of $350,000 in compensatory damages and $350,000 in punitive damages was excessive. We cannot agree.

In general,

> the jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in the light of the evidence, as to create a clear implication of bias, prejudice or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience. Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence.

(Punctuation omitted.) *Consolidated Freightways Corp. &c. v. Futrell*, 201 Ga. App. 233, 234 (2) (410 SE2d 751) (1991).

In this case, due to the evidence of E-Z Serve's conscious disregard for Crowell's hardships caused by its own failure to handle its false alarm citation, we cannot say that the jury's verdict is so flagrant as to shock the conscience, and E-Z Serve has provided us with no compelling evidence to overturn the jury's verdict.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED MAY 17, 2000.

*Newman, Sapp & Davis, Alan L. Newman, Michele L. Davis,* for appellant.

*Middleton, Mathis, Adams & Tate, Charles A. Mathis, Jr., David F. Walbert, Herald J. A. Alexander,* for appellee.

