## A08A0596. WILDCAT CLIFFS BUILDERS, LLC v. HAGWOOD.

### (663 SE2d 818)

MILLER, Judge.

Ed Hagwood sued Wildcat Cliffs Builders, LLC ("Wildcat") for trespass and nuisance, seeking both compensatory and punitive damages as well as attorney fees. The jury found in favor of Hagwood and awarded him $90,000 compensatory damages and $100,000 punitive damages. Hagwood thereafter moved for and received attorney fees and expenses of $14,688.56. Wildcat now appeals from the trial court's entry of judgment on the jury's verdict as to Hagwood's punitive damages claim, asserting that the evidence was insufficient to support such an award and that the trial court erred in denying its motion for directed verdict as to that claim. Wildcat also appeals the award of attorney fees and expenses, arguing that such an award was improper in the absence of evidence justifying an award of punitive damages. Discerning no error, we affirm.

"The standard of review of a trial court's denial of a motion for a directed verdict is the any evidence standard, and the evidence is construed most favorably toward the party opposing the motion." (Citation and punctuation omitted.) *E-Z Serve Convenience Stores v. Crowell*, 244 Ga. App. 43 (1) (535 SE2d 16) (2000). Accordingly, "[a] directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable inferences therefrom demands a particular verdict" in favor of the moving party. (Citations and punctuation omitted.) *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 706-707 (2) (569 SE2d 608) (2002).

Construed in favor of the verdict, the evidence shows that between 2001 and 2005 Wildcat developed and constructed a portion of the Wildcat Lakes subdivision in Lawrenceville. The back of lot number 73 in that subdivision ("Lot 73") adjoined property owned by Hagwood. In October 2003, Mark Rudolph, the owner of Wildcat, learned that the house he had planned to build on Lot 73 would require that the lot be graded or a retaining wall be built at the rear of the property. Rudolph preferred to grade the property, because of the expense and potential liability associated with a retaining wall. To grade Lot 73 properly, however, Wildcat also needed to grade a portion of Hagwood's property. Thus, during late 2003, Wildcat made several attempts to contact Hagwood about purchasing a portion of his property adjacent to Lot 73. On at least three occasions, Rudolph's business card was left on Hagwood's front door with notes expressing an interest in buying part of his property and asking Hagwood to contact Rudolph. Hagwood never responded because he had no interest in selling even part of his land.

Upon returning home from work one day in summer or fall of

2003, Hagwood found Rudolph waiting for him in his driveway. Rudolph inquired about purchasing part of Hagwood's land and Hagwood explained he had no interest in selling.

Wildcat thereafter graded and built two concrete retaining walls on what it believed to be the rear portion of Lot 73. However, Wildcat's grading contractor also graded a portion of Hagwood's land, in the process taking down approximately 41 old-growth, hardwood trees. Additionally, portions of the retaining walls, which were each five feet high, were built on Hagwood's property. Hagwood discovered the damage to his property in late May or early June 2004 and immediately contacted Wildcat.

After a surveyor confirmed that Wildcat had encroached on Hagwood's property, Rudolph met with Hagwood to discuss the situation. At that meeting, Rudolph told Hagwood that inadvertent intrusions such as this happened "quite often," and that the property owner usually gave Wildcat an easement. Hagwood expressed that he was unwilling to grant such an easement and that he wanted his property restored. At that point, Rudolph left the meeting. Hagwood later received a letter from Rudolph, dated June 30, 2004, in which Wildcat offered to pay Hagwood $10,000 in exchange for an easement on Hagwood's property and Hagwood's agreement to assume any liability arising from the retaining walls located thereon.

Hagwood rejected that offer, and thereafter attempted to contact Rudolph on several occasions to discuss his property damage. Rudolph indicated that the offer of $10,000 in exchange for an easement and an assumption of liability by Hagwood was the only offer Wildcat intended to make. Hagwood attempted for approximately six months to obtain a satisfactory resolution before going to an attorney.

After Wildcat performed the grading and installed the retaining wall on Hagwood's land, Hagwood began experiencing severe problems with run-off and erosion. The only testimony on this issue was that these problems resulted from the grading performed by Wildcat's contractor, the way in which the retaining walls were placed on the property, the failure to install a drain on Lot 73 and/or to create a water-catchment swell, and the number of large trees removed from Hagwood's property.

The run-off from Hagwood's property resulted in large pools of water and mud washing into the street, and Hagwood was contacted by several homeowners in Wildcat Lakes about the problem. Some of those homeowners also contacted Wildcat directly about the problems with the run-off, and one of those homeowners called the Wildcat office at least five times to complain. None of the homeowners received any response from Wildcat, and Wildcat never per-

formed any work on either Lot 73 or Hagwood's property to ameliorate or rectify the run-off and erosion problem.

During trial, Wildcat moved for a directed verdict on Hagwood's claim for punitive damages at the close of his case. The trial court denied the motion and sent the issue of punitive damages to the jury. In response to special interrogatories on the verdict form, the jury found that Wildcat did not act with a "specific intent to cause harm by possessing the desire to cause the consequences of its actions," but did find that Wildcat had acted in such a way as to "raise the presumption of a conscious indifference to consequences."

Wildcat now appeals from the judgment entered on the jury's verdict as to punitive damages and the award of attorney fees and expenses.

1. Wildcat first asserts that the trial court erred in denying its motion for a directed verdict on the issue of punitive damages, because the evidence was insufficient to sustain such a claim. We disagree.

Under OCGA § 51-12-5.1 (b),

> [p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Here, Hagwood does not challenge the jury's finding that Wildcat did not act with the intent to cause the damages at issue. Thus, the question is whether the evidence supports the jury's finding that Wildcat's conduct following its unintentional trespass onto Hagwood's property showed "that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). See also *Hoffman v. Wells*, 260 Ga. 588 (1) (397 SE2d 696) (1990) (punitive damages may be authorized even in the absence of wilful and intentional misconduct).

A party acts with "conscious indifference to consequences" where it acts with a knowing or wilful disregard of the rights of another. *E-Z Serve Convenience Stores v. Crowell*, supra, 244 Ga. App. at 46 (1) (c). The Supreme Court of Georgia has specifically held that such a conscious indifference to consequences may exist where a party creates a nuisance that causes a run-off of water and silt onto or from another's property, and thereafter fails to ameliorate or remedy the same. *Tyler v. Lincoln*, 272 Ga. 118, 120-121 (1) (527 SE2d 180) (2000). See also *Raymar, Inc. v. Peachtree Golf Club*, 161 Ga. App. 336, 338 (1) (e) (287 SE2d 768) (1982) (affirming an award

of punitive damages where the trial judge had instructed the jury that "a conscious indifference to the consequences may be defined as the failure to correct a silt or drainage problem after receiving notice of the problem causing the damages for which the defendant was responsible") (punctuation omitted). Thus, even where the defendant did not act with conscious indifference in creating the problem that led to the damage, punitive damages may be justified if the defendant acted with such conscious indifference in failing to correct that problem. *Ponce de Leon Condos v. Di Girolamo*, 238 Ga. 188, 189-190 (1) (232 SE2d 62) (1977); *Dyches Constr. Co. v. Strauss*, 192 Ga. App. 454, 457 (1) (385 SE2d 316) (1989).

In addition to Wildcat's creation of the problem causing the erosion and run-off problems, factors supporting a finding of conscious indifference to the consequences include its awareness of its conduct and the consequences thereof and its subsequent refusal to take any action either to ameliorate or rectify the problem it created. *Tyler*, supra, 272 Ga. at 120-121 (1). It is undisputed that Wildcat trespassed on Hagwood's property and created a continuing nuisance thereon, which resulted in the severe run-off and erosion problems at issue. The evidence shows that Wildcat was put on notice of its conduct and continuing consequences thereof. Despite this knowledge, Wildcat made no effort to either remedy or ameliorate the problem.

In this regard, evidence was presented showing that at least some of the factors contributing to the problem — i.e., the improper grading, the construction and position of the retaining wall, and the lack of a drainage system or swells — could have been corrected. Wildcat presented no evidence, however, to suggest that it took steps to correct these problems. In its defense, Wildcat now claims that it could not correct these problems without going onto Hagwood's property and that it did not have permission to do so. This argument, however, ignores the fact that Wildcat never sought permission to go onto Hagwood's property for the purpose of taking remedial measures.

Additionally, on the issue of damages, Wildcat presented the testimony of Dennis Rainwater, a landscaper who did a significant amount of work for Wildcat in the Wildcat Lakes subdivision. Rainwater testified that in June 2006, in preparation for trying the current case, Rudolph asked him to present an estimate for the cost of replacing the trees Wildcat had removed from Hagwood's property. On cross-examination, Rainwater stated that while he had done work in Wildcat Lakes on a regular basis between 2004 and 2006, he had never before been asked about the possibility of replacing such trees or to provide an estimate for the same.

In sum, the evidence showed that Wildcat had no interest in remedying or lessening the run-off problem or compensating Hagwood for the property damage he had sustained. Rather, it was amenable only to paying Hagwood for an easement and a release from all liability arising from the retaining walls it had constructed on Hagwood's property. The foregoing evidence was sufficient to authorize the jury's conclusion that, after it learned of its trespass onto Hagwood's property and its creation of a continuing nuisance thereon, Wildcat acted with a conscious indifference to the consequences of its conduct. See *Tyler*, supra, 272 Ga. at 120-121; *Sumitomo Corp.*, supra, 256 Ga. App. at 707; *Baumann v. Snider*, 243 Ga. App. 526, 530-531 (532 SE2d 468) (2000).

2. Hagwood requested and received attorney fees and expenses pursuant to OCGA § 9-11-68 (b) (2), which provides:

> If a plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the plaintiff shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the plaintiff or on the plaintiff's behalf from the date of the rejection of the offer of settlement through the entry of judgment.

Prior to trial, Hagwood offered to settle the case for $110,000. After the jury awarded him a total of $190,000 in damages, therefore, he was statutorily entitled to recover his attorney fees and expenses.

On appeal, Wildcat argues that this award must be overturned, because, in the absence of the punitive damages award, Hagwood did not recover greater than 125 percent of his offer of settlement. Given that we have sustained the award of punitive damages, this argument is moot.

In light of the foregoing, we affirm the entry of judgment against Wildcat and in favor of Hagwood, including the award of $100,000 in punitive damages and $14,688.56 in attorney fees and expenses.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 25, 2008.

*Carlock, Copeland, Semler & Stair, Kimberly M. DeWitt, Shannon M. Sprinkle, David F. Root*, for appellant.

*Larry E. Stewart*, for appellee.