A10A1138. LN WEST PACES FERRY ASSOCIATES, LLC et al.
v. McDONALD.
(703 SE2d 85)

POPE, Senior Appellate Judge.

This case is the culmination of a rather contentious property dispute between two adjacent property owners. John R. McDonald sued his neighbor Lee Najjar and Najjar's company, LN West Paces Ferry Associates, LLC[1] (collectively, "Najjar"), after Najjar trespassed on McDonald's property and tied into his sewer line without permission. A jury trial resulted in a verdict of $475,000 in favor of McDonald, which consisted of compensatory and punitive damages as well as attorney fees. The trial court entered judgment on the jury's verdict. Najjar contends that the trial court erred by denying his motion for directed verdict and/or motion for judgment notwithstanding the verdict; by denying his motion to exclude certain evidence offered by McDonald as a sanction for an alleged discovery violation; and by denying his motion for a mistrial and/or continuance based upon several alleged errors. We affirm.

> If a jury has returned a verdict, which has been approved by the trial judge, then the same must be affirmed on appeal if there is any evidence to support it[,] as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the verdict will be upheld on appeal.

(Citations and punctuation omitted.) *City of Atlanta v. WH Smith Airport Svcs.*, 290 Ga. App. 206 (659 SE2d 426) (2008).

Bearing in mind these principles, we turn to the record in this case. McDonald and Najjar own adjacent property lots in an affluent Atlanta neighborhood. After purchasing the property in 2004, Najjar embarked upon a major renovation project that ultimately resulted

---

[1] At the time of the events in question, Lee Najjar's residence was titled in the name of his company, LN West Paces Ferry Associates, LLC.

in the development of a 30,000 square foot residence. Toward the end of the construction, Najjar's plumbing contractor discovered that the residence was not connected to a sewer line. Nor was Najjar's architect able to find any evidence of a septic system on his property. Najjar's plumbing contractor suggested the installation of a pump station in the back of Najjar's property, but Najjar rejected that option as too costly and disruptive to his existing landscaping.

At some point it was discovered that McDonald's adjacent property lot contained private access to the sewer via a manhole that had been funded by the previous owner of McDonald's property in conjunction with two other neighbors. The manhole was located approximately 220 feet from the boundary of Najjar's property. Najjar called the previous owner and expressed an interest in running a sewer lateral onto the property in order to tie into the manhole, but was informed that she had sold the property to McDonald. Najjar then left a voicemail message for McDonald regarding a potential easement. McDonald, who was fighting cancer at the time, instructed his real estate attorney to return Najjar's telephone call. The attorney spoke to Najjar and requested that Najjar submit to him plans showing the location of the desired easement; Najjar did not do so.

Instead, without first obtaining permission by McDonald, Najjar instructed his architect to direct the plumbing contractor to tie into the manhole on McDonald's property. The plumbing contractor refused. He informed both Najjar and Najjar's architect that he would not subject his company to the potential liability associated with trespassing onto the neighboring property without first securing a sewer easement. He was told to "[d]o it anyway."

The plumbing contractor instead ran the underground sewer line to the property boundary and then stopped. When he returned to Najjar's property two or three days later, he noticed evidence that a trench had been bulldozed from Najjar's property line to the manhole located on McDonald's property, and that the trench line had then been covered in tree limbs and other foliage. Najjar admitted that he told one of his laborers to lay the sewer lateral across McDonald's property.

When McDonald discovered the sewer line, he filed the instant action in which he asserted claims for trespass and ejectment and sought compensatory and punitive damages as well as attorney fees. He later learned that a retaining wall built by Najjar also encroached onto his property, and amended the complaint to include a claim for trespass and ejectment as to the encroaching retaining wall. Najjar in turn filed a verified answer and counterclaim in which he asserted the existence of and his entitlement to a sewer easement extending from his property to McDonald's manhole that "ha[d] been located

there for decades"; sought a declaratory judgment for breach of quiet title to the easement; asserted a claim for damages associated with McDonald's tortious interference with the easement; sought a preliminary and permanent injunction prohibiting McDonald from extinguishing the easement; and claimed an entitlement to attorney fees.[2] A jury ruled in favor of McDonald and this appeal followed.

1. Najjar first argues that the trial court erred in denying his motion for directed verdict and/or motion for judgment notwithstanding the verdict because he contends that the evidence did not support a finding of intentional trespass sufficient to support an award of compensatory and punitive damages, or a finding of bad faith sufficient to support an award of attorney fees and expenses. "The standard of review on appeal requires [Najjar] to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Citations and punctuation omitted.) *Harrouk v. Fierman*, 291 Ga. App. 818, 820 (1) (662 SE2d 892) (2008).

(a) *Trespass.* An owner of real property "has the right to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from [its] use." (Punctuation omitted.) *Navajo Constr. v. Brigham*, 271 Ga. App. 128, 129 (608 SE2d 732) (2004). In an action for trespass, the landowner may recover compensatory damages upon a showing of "any wrongful, continuing interference with a right to the exclusive use and benefit of a property right." (Punctuation and footnote omitted.) *Tingle v. Jones*, 249 Ga. App. 654, 656 (549 SE2d 477) (2001). See OCGA § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."); *Dowdell v. Cherry*, 209 Ga. 849 (76 SE2d 499) (1953); *Wright v. Wilcox*, 262 Ga. App. 659, 662 (1) (586 SE2d 364) (2003). Moreover, punitive damages may be awarded for a trespass that reflects "an intentional disregard of the rights of another." *Tyler v. Lincoln*, 272 Ga. 118, 120 (1) (527 SE2d 180) (2000). See OCGA § 51-12-5.1 (b).

Here, Najjar's interference with McDonald's property right has been well established. He nonetheless argues that he was entitled to judgment as a matter of law because he was an innocent, as opposed to wilful, trespasser. In support of this argument, Najjar asserts, just as he did at trial, that a sewer plat allegedly provided to him by the City of Atlanta had been mislabeled, leading him to believe that the

---

[2] Najjar ultimately negotiated a sewer easement with a different adjacent property owner which eliminated the need for him to use McDonald's manhole.

manhole located on McDonald's property was actually on his own.

The innocent trespasser doctrine "protects individuals who enter the land of another under the mistaken belief that it is permissible to do so," and provides under those circumstances that the "unintentional and nonnegligent entry . . . does not automatically subject an individual to liability even though the entry causes harm to the possessor." (Citations, punctuation and footnotes omitted.) *Bullard v. Bouler*, 272 Ga. App. 397, 399 (2) (612 SE2d 513) (2005) (affirming jury verdict in which the jury held liable a property owner who instructed a contractor to prune trees located on his neighbor's property, but declined to extend liability to the contractor himself). See also *Brand v. Montega Corp.*, 233 Ga. 32, 33-34 (2) (209 SE2d 581) (1974) (affirming jury verdict declining to award damages to plaintiff for surface-water invasion unintentionally caused by defendant). See also *C. W. Matthews Contracting Co. v. Wells*, 147 Ga. App. 457, 458-459 (2) (249 SE2d 281) (1978). The burden rested with Najjar to establish that he was an innocent trespasser, and the question as to whether he met that burden was for the jury to determine. *Norton v. Holcomb*, 285 Ga. App. 78, 84-85 (3) (646 SE2d 94) (2007).

Here, the jury was charged on the innocent trespasser doctrine and chose to reject it. There is plenty of record evidence supporting the jury's decision to do so. First, Najjar's architect admitted that it was him — not a representative from the City of Atlanta — who altered the sewer plat upon which Najjar allegedly relied so as to mislabel McDonald's property as that of Najjar's. Regardless, the record is devoid of any evidence that either Najjar or anyone working for him was operating under the misconception that McDonald's manhole was located on Najjar's property when the sewer lateral was being laid. Najjar's architect further admitted that he was informed by a representative from the City of Atlanta that there was no public sewer easement serving Najjar's property and that, if an easement did exist, it was a private easement over which the City had no authority. The evidence shows that both Najjar and his architect were aware that no such private easement existed. And the plumbing contractor's testimony[3] established definitively that both Najjar and his architect were told that entry onto McDonald's property would constitute an unlawful trespass, and yet they instructed the contractor to "[d]o it anyway." After the plumbing contractor refused to do so, Najjar admitted that he nonetheless had one of the general

---

[3] As discussed in Division 2 (b), the plumbing contractor was unavailable during the trial and his testimony was introduced by way of deposition.

laborers in his employ complete the work on McDonald's property.[4]

Under these circumstances, the evidence was more than sufficient to support a finding that Najjar directed the construction of the sewer lateral across McDonald's property knowing that he had neither a written easement nor permission from McDonald to do so. See *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 687 (6) (689 SE2d 62) (2009); *Norton*, 285 Ga. App. at 84-85 (3); *Young v. Faulkner*, 228 Ga. App. 587, 588-589 (492 SE2d 331) (1997). Upon establishing the wilful trespass, the jury was entitled to award McDonald both compensatory and punitive damages, the amount of which Najjar does not challenge. See generally OCGA §§ 51-9-3 ("The bare possession of land shall authorize the possessor to recover damages from any person who wrongfully interferes with such possession in any manner"); 51-12-5.1 (b) (punitive damages are authorized upon a finding of wilful misconduct). See also *Wildcat Cliffs Builders v. Hagwood*, 292 Ga. App. 244, 246 (1) (663 SE2d 818) (2008); *Wright*, 262 Ga. App. at 662 (1).

(b) *Attorney fees and expenses*. Najjar also argues that the jury's award of attorney fees and expenses was unauthorized under OCGA § 13-6-11. Under that statute, a plaintiff is entitled to the award upon a showing that "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]"

Contrary to Najjar's contention,

> the intentional tort of trespass will support a claim for expenses of litigation and attorney fees under OCGA § 13-6-11. The legal theory is that the intentional nature of the trespass gives rise to the bad faith necessary for such recovery.

*Paine v. Nations*, 283 Ga. App. 167, 171 (2) (d) (641 SE2d 180) (2006). See *Tyler*, 272 Ga. at 122 (2) ("[E]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees.") (citations and punctuation omitted). As set forth in Division 1 (a), the evidence supported the jury's finding that Najjar's trespass onto McDonald's property was both knowing and wilful. It follows that the award of attorney fees and expenses of litigation was authorized based upon Najjar's bad faith. See id. And although the costs of attorney fees in this case were substantial relative to the compensatory damages at

---

[4] In addition to failing to acquire permission from McDonald, Najjar admitted that he did not obtain a permit to tap into the public sewer system as required by the City of Atlanta, nor did he render any payment for the sewer usage.

issue, McDonald presented evidence that the fees were reasonable in light of the considerable amount of time and expense required to disprove the broad allegations in Najjar's counterclaim regarding the existence of and his entitlement to an easement. See *Baker v. Miller*, 265 Ga. 486 (2) (458 SE2d 621) (1995) ("An award of attorney fees supported by any evidence must be affirmed.") (footnote omitted).

2. Najjar next argues that the trial court erred by denying his motion to exclude certain evidence offered by McDonald after the close of discovery. Specifically, Najjar sought to prohibit the intro-duction of testimony from four expert witnesses, as well as the testimony of the plumbing contractor by way of deposition. We will address each in turn.

(a) The expert witnesses about whom Najjar complains consisted of an expert who estimated the amount of damages suffered by McDonald; a surveyor who conducted a survey of McDonald's property; a title examiner who searched the title history of McDonald's property; and an attorney who spoke to the reasonable-ness of McDonald's attorney fees. Contending that he had been "sandbagged," Najjar moved to exclude the witnesses' testimony as a sanction for what he argued was a "blatant violation of the discovery rules and the [p]retrial [o]rder." The trial court denied Najjar's motion, but instructed McDonald to ensure that the experts were made available to Najjar for interviewing, and Najjar indicated that he would be able to accomplish the interviews on the evening of the first day of trial.

A trial court is granted broad authority both to control the course of a trial and to manage discovery disputes, including the imposition of discovery sanctions. See *Smith v. Morris, Manning & Martin*, 293 Ga. App. 153, 168 (7) (666 SE2d 683) (2008); *Gen. Motors Corp. v. Blake*, 237 Ga. App. 426, 427 (1) (515 SE2d 166) (1999). We will not interfere with the trial court's exercise of that discretion absent a showing of clear abuse. Id. See also *de Castro v. Durrell*, 295 Ga. App. 194, 204 (3) (671 SE2d 244) (2008).

As an initial matter, we note that it is undisputed that the witnesses at issue were identified shortly after the case commenced in McDonald's initial response to Najjar's discovery requests, al-though they were listed as fact, as opposed to expert, witnesses. Nonetheless, the discovery requests directed McDonald to "promptly" supplement responses as additional knowledge or infor-mation became available, "but in no event later than the earlier of thirty (30) days after the receipt by . . . McDonald of any such additional knowledge or information, or twenty-one (21) days before trial." See also OCGA § 9-11-26 (e) (1) (B) ("A party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . [t]he identity of each person expected to be

called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony."). Likewise, although the consolidated pretrial order submitted to the court included the names of the subject witnesses as persons (not experts) who may be called during the trial and indicated that discovery in the case was closed, it too authorized either party to amend its list of evidence to be tendered at trial by giving opposing counsel at least five days notice prior to trial.

It is undisputed that McDonald served supplemental discovery responses upon Najjar in which he identified the subject witnesses as experts and provided the substance of their testimony, and that the supplemental responses were served on Najjar more than 21 days prior to the trial date. Further, Najjar does not allege nor is there any evidence to suggest that McDonald's notification did not come promptly after the decision to use the expert witnesses had been made. It follows that McDonald's supplemental responses were in compliance with the express terms of the discovery requests, the codified discovery rules, and the pretrial order. Moreover, since the witnesses had been previously identified to Najjar, he cannot legitimately claim to have been surprised by the admission of their testimony. See *Gill v. Spivey*, 264 Ga. App. 723, 725 (2) (592 SE2d 132) (2003) ("[T]he purpose of excluding testimony as a discovery sanction is to eliminate surprise.") (footnote omitted). Thus, Najjar has failed to show either the existence of a discovery violation or an abuse of discretion by the trial court. See generally *Stewart v. Odunukwe*, 273 Ga. App. 380, 381-382 (615 SE2d 223) (2005); *Gill*, 264 Ga. App. at 724-725 (2).

(b) Najjar further argues that the trial court abused its discretion by allowing McDonald to introduce the testimony of the plumbing contractor by way of deposition. Sometime between the deposition and the trial, the plumbing contractor became imprisoned. McDonald applied for and was granted a writ of habeas corpus ad testificandum, authorizing the sheriff to transport the witness from the detention center where he was being housed to the courthouse to testify during the trial. Prior to the commencement of the trial, however, the witness was unknowingly moved to a different state facility, rendering the writ ineffective. McDonald thereafter moved to admit portions of the witness's deposition at trial, which had been given under oath and during which the witness was subject to cross-examination by Najjar's attorney. The trial court allowed the testimony over Najjar's objection.

Georgia law authorizes the admission of deposition testimony during the course of a trial if the witness is unavailable to attend due to imprisonment. OCGA § 9-11-32 (a) (3) (C) ("At the trial . . . , any part or all of a deposition . . . may be used against any party who was

present or represented at the taking of the deposition or who had reasonable notice thereof, . . . if the court finds . . . [t]hat the witness is unable to attend or testify because of . . . imprisonment."). The decision as to whether to allow the use of deposition testimony lies squarely within the sound discretion of the trial court. See *Gill*, 264 Ga. App. at 725 (3). See also OCGA § 9-11-32 (a) (4) ("The deposition of a witness, whether or not a party, taken upon oral examination, may be used in the discretion of the trial judge, even though the witness is available to testify in person at the trial.").

The evidence establishes that the plumbing contractor was imprisoned when the trial commenced.[5] Despite his best efforts to do so, McDonald was unable to procure the attendance of the witness due to his imprisonment. Because the Code expressly authorizes the use of deposition testimony if imprisonment renders a witness unavailable, OCGA § 9-11-32 (a) (3) (C), the trial court did not abuse its discretion by allowing the use of the plumbing contractor's deposition testimony. See generally *Spencer v. Dupree*, 150 Ga. App. 474, 479 (6) (258 SE2d 229) (1979); *Kamman v. Seabolt*, 149 Ga. App. 167, 169 (6) (253 SE2d 842) (1979).

3. Najjar contends that the trial court erred in denying him a mistrial and/or continuance in order to allow him to (a) conduct discovery related to the expert witnesses discussed in Division 2 (a); (b) secure the attendance of the plumbing contractor; and (3) explore what he contends was a waiver of McDonald's attorney-client privilege during opening argument. Najjar's assertions lack merit.

(a) The record shows definitively that Najjar rejected at least two separate offers of a continuance in order to conduct discovery of the expert witnesses prior to the commencement of the trial. McDonald first offered Najjar a continuance to allow him to conduct discovery at the time he supplemented his interrogatory responses to identify the witnesses as experts, which Najjar rejected. And then when Najjar sought to exclude the witness testimony as a discovery sanction, the trial court inquired into a possible continuance and, again, Najjar rejected the possibility. Najjar admitted that he did so in anticipation that the trial court would instead exclude the testimony. It was not until the morning of the second day of trial that Najjar, for the first time, moved for a continuance. "A party cannot complain of error created by his own legal strategy, trial procedure or conduct." (Footnote omitted.) *In re Vincent*, 240 Ga. App. 876, 878

---

[5] The trial court was entitled to rely upon the representations of McDonald's attorney, which were not challenged by Najjar, to establish this fact. See *Sheffield v. Lockhart*, 151 Ga. App. 551, 553 (2) (260 SE2d 416) (1979) ("[A]ttorneys are officers of the court, and a statement to the court in his place is prima facie true and needs no further verification unless the same is required by the court or the opposite party.") (citation and punctuation omitted).

(2) (a) (525 SE2d 409) (1999). See *Flowers v. Union Carbide Corp.*, 271 Ga. App. 438, 441-442 (1) (b) (610 SE2d 109) (2005). Regardless, to the extent that Najjar's claim was not waived by his conduct, the trial court did not abuse its discretion by denying his motion, since the court instructed McDonald to ensure that the experts were made available to Najjar for interviewing, and Najjar indicated that he would be able to accomplish the interviews on the evening of the first day of trial. See OCGA § 9-10-167 (a); *Haygood v. Tilley*, 295 Ga. App. 90, 93-94 (2) (670 SE2d 800) (2008); *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 603-604 (3) (431 SE2d 383) (1993); *Turner v. City of Nashville*, 177 Ga. App. 649, 650-651 (2) (340 SE2d 619) (1986).

(b) Najjar further asserts that the trial court's failure to grant him a mistrial and/or continuance in order to secure the attendance of the plumbing contractor denied him the opportunity to effectively cross-examine that witness about his criminal history. As an initial matter, we note that Najjar neither moved for a mistrial nor a continuance upon learning that the witness was unavailable; rather, it was not until the following day that Najjar first made his motion. Regardless, Najjar impeached the plumbing contractor's testimony to the fullest extent allowed by law by introducing and reading into the record a certified copy of the witness's felony conviction. See OCGA § 24-9-84.1 (a) (1); *Vincent v. State*, 264 Ga. 234, 234-235 (442 SE2d 748) (1994) (impeachment by proof of conviction of a crime is accomplished by tendering certified copies of the conviction; the facts surrounding a conviction are irrelevant and inadmissible); *Henderson v. State*, 247 Ga. App. 31, 31-32 (1) (543 SE2d 95) (2000) (same). Najjar thus presents no grounds for reversal.

(c) Finally, Najjar argues that the trial court erred in denying his motion for mistrial and/or continuance based upon McDonald's alleged waiver of the attorney-client privilege during opening argument. In the challenged statement, McDonald's attorney stated that he counseled McDonald that "the law frowns on self help" and therefore discouraged him from removing the sewer lateral himself. Again, Najjar waited until the morning after the opening statement was given to make his motion for mistrial and/or continuance. By failing to object to the statement at the time it was made, Najjar waived this argument on appeal. See generally *Butler v. State*, 273 Ga. 380, 383-384 (8) (541 SE2d 653) (2001); *Brooks v. State*, 284 Ga. App. 762, 764 (644 SE2d 891) (2007).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

*Jeremy U. Littlefield, Richard L. Robbins*, for appellants.
*Davis, Matthews & Quigley, Ron L. Quigley, Matthew R. Thiry, Mina A. Elmankabady*, for appellee.