GENERAL PRODUCTIONS,
LLC, Plaintiff,

v.

I.A.T.S.E. LOCAL 479 and Michael
Akins, Defendants.

Civil Action No. 1:13–cv–2897–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 4, 2013.

C. Samuel Rael, Office of C. Samuel Rael, Atlanta, GA, for Plaintiff.

James D. Fagan, Jr., Stanford & Fagan, Atlanta, GA, Robert S. Giolito, Law Office of Robert S. Giolito, P.C., Los Angeles, CA, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on the motion to dismiss [4] filed by Defendants International Alliance of Theatrical Stage Employees Local 479 and Michael Akins [4].

## I. Background

Plaintiff General Productions, LLC is a Georgia limited liability company engaged in the movie-making business. Earlier this year Plaintiff invested money in the production of a "low budget motion picture known as The Last Punch." It hired a producer, director, actors and other crew members for the movie.

In July 2013, International Alliance of Theatrical Stage Employees ("IATSE"), a national labor union for movie-production employees, sent Plaintiff a collective-bargaining agreement ("CBA") entitled "Low and Very Low Budget Theatrical Area Standards Agreement." If Plaintiff signed the agreement, it would be required to pay union wages and make financial contributions to IATSE. Plaintiff avers that it did not request this document and that it was unaware its employees were union members. In fact, Plaintiff contends that it was "understood and agreed, as a condition of employment, that Plaintiff's production was a very low budget production and would be a non-union production." Plaintiff later learned that the movie's producer, Taj Lewis, had contacted IATSE.

After receiving the CBA, Plaintiff told IATSE in a letter dated July 7, 2013, that the movie production was non-union. On July 14, IATSE informed Plaintiff that a "majority of the employees in the crafts and classifications of artisans and technicians" had designated IATSE as their employee representative. IATSE warned Plaintiff that IATSE had instructed its members and other supporters to cease working on the project until an agreement had been reached.

Plaintiff avers that it could not afford to have its production shut down, so it agreed to negotiate with IATSE even though it felt coerced to sign the CBA. Plaintiff also contends that by negotiating with IATSE and signing the CBA, it violated prior con-

tracts between itself and the producer, director and other contractors.

On July 18, 2013, IATSE and Plaintiff signed the CBA; on August 1 Defendant Michael Akins, the representative for Defendant Local 479, signed it; and on August 2 and 5, two other local union representatives signed it. As part of the agreement, Plaintiff had to hire a paymaster, who would collect "employee fringes and contributions to pension, health and retirement plans according to labor union requirements." Despite signing the agreement, Plaintiff still maintained that it would not "tolerate any tampering or interference with its workers and contractors or with the production of the film" by Defendants and IATSE.

On August 2, 2013, Akins and a "non-employee labor union organizer" entered the movie set during working hours and "tort[i]ously interfered with Plaintiff's film production." Specifically, Plaintiff avers that Local 479 and Akins entered its set without permission, took employees away from their work and duties, and distributed payroll checks to union members, which was not Defendants' responsibility. Plaintiff contends that the paycheck distribution caused a tremendous amount of strife among the workers, as some union members were paid but not "other workers and contractors." Plaintiff avers that these actions violated the National Labor Relations Act ("NLRA").

On August 6, 2013, Plaintiff filed this action in the Superior Court of Fulton County, Georgia, seeking injunctive relief and pleading state-law claims for trespass and tortious interference with a business relationship.[1] The next day, Plaintiff sent a letter to Akins informing him that Plaintiff considered the agreement between Local 479 and Plaintiff to be "terminated and

null and void" based on Defendants' actions on August 2. The letter also stated that more details could be found in the lawsuit Plaintiff had just filed.

On August 30, 2013, Defendants removed the action to this Court, and they filed a motion to dismiss on September 4. Defendants contend that Plaintiff's action is preempted by federal labor law, specifically § 301 of the Labor Management Relations Act ("LMRA") and the NLRA.

## II. Section 301 of the LMRA

Defendants' first argument is that Plaintiff's claims are preempted by § 301 and consequently must be dismissed.

### A. Legal Standard

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that the preemptive force of this statute is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (internal quotations omitted).

In fact, preemption applies whether the claims arise under contract or tort law. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of

---

**1.** Plaintiff states at the beginning of its complaint that it also pleads an accounting claim; however, it does not actually include such a claim in the complaint.

§ 301 must extend beyond suits alleging contract violations."). Thus, "when the heart of the state-law complaint is a clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar,* 482 U.S. at 394, 107 S.Ct. 2425 (internal quotations, citation and alterations omitted).

■ However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis–Chalmers,* 471 U.S at 211, 105 S.Ct. 1904. The inquiry is whether the state-law claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. 1904. That is, the "relevant question for preemption purposes is whether [the] state-law claims asserted against the [defendant] would require the court to apply or interpret the CBA." *Atwater v. Nat'l Football League Players Ass'n,* 626 F.3d 1170, 1178–79 (11th Cir.2010); *see also Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 858, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) ("Under the principle set forth in *Allis–Chalmers,* we must determine if respondent's claim is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301.").

**B. Analysis**

Defendants contend that Plaintiff's state-law claims are "inextricably intertwined" with the CBA and preempted by § 301. Specifically, Defendants contend that Plaintiff's trespass claim is intertwined with article 11 of the CBA, which allows union representatives to enter Plaintiff's property, and that Plaintiff's tortious-interference claim requires interpretation of the payroll and payroll-security terms of the CBA.

Plaintiff responds that its state-law claims are "dependent upon the substantive law of the state of Georgia," do not require analysis of the CBA's terms, and consequently do not "implicate provisions of the collective bargaining agreement *per se.*" Plaintiff also contends that its claims center on Defendants' discriminatory conduct, i.e., treating union and non-union film workers differently, and that this conduct violates the "statutory prohibition against discrimination" and requires "state constitutional law analysis." Plaintiff also argues that the "compelling state interest" preemption exception applies and prevents dismissal of its claims.

**1. Trespass Claim**

■ Plaintiff avers that Akins and another union representative trespassed on its movie set on August 2, the day after Akins signed the agreement on behalf of Local 479. The success of this claim hinges on Plaintiff's ability to show a "wrongful continuing interference with a right to the exclusive use and benefit of a property right." *LN W. Paces Ferry Assocs., LLC v. McDonald,* 306 Ga.App. 641, 703 S.E.2d 85, 89 (2010) (citation omitted).

Article 11 of the CBA is entitled "Union Access and Union Representative." It provides that Plaintiff "will permit an authorized representative of the Union access to all production sites where bargaining unit employees are performing work." This article appears to give Defendants permission to enter the set. Consequently, determining the validity of the trespass claim will absolutely require interpretation of the CBA. *See Clarke v. Laborers' Int'l Union of N. Am., AFL–CIO,* 916 F.2d 1539,1542 (11th Cir.1990) (state-law negligence claim preempted because claim could not be "considered independent of

the collective bargaining agreement since the claim would necessarily require an examination of the parties' obligations under the agreement"); *cf. Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union,* 900 F.Supp. 419, 420–21 (M.D.Fla.1995) (§ 301 did not preempt state-law trespass claim where there was no "employer-union contract or agreement of any kind involved"). Thus, this claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. 1904.

Accordingly, the Court will grant Defendants' motion to dismiss this claim as preempted.

### 2. Tortious–Interference Claim

■ Plaintiff asserts that Defendants interfered with the business relationships it had with its producer, director, workers, contractors, crew and staff by (1) entering the set without permission; (2) interacting with workers during work hours, which took them away from their work and duties; and (3) discriminatorily distributing payroll checks, which caused "disharmony and discord" among workers and delayed the production schedule.

■ To succeed on its claim for tortious interference with business relations, Plaintiff must show that Defendants (1) acted improperly and without privilege; (2) acted purposefully and maliciously with an intent to injure; (3) induced a third party not to enter into or continue a business relationship with Plaintiff; and (4) caused Plaintiff some financial injury. *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III,* 213 Ga.App. 333, 444 S.E.2d 814, 817 (1994). Malice in this context means "any unauthorized interference, or any interference without legal justification or excuse." *Id.*

■ Article 11 of the CBA, as discussed above, appears to allow Defendants onto Plaintiff's movie set; article 8 details payment of wages; and article 12 contains an anti-discrimination policy that extends to union membership. These portions of the agreement seem to justify the behavior Plaintiff contends was unlawful. And, "[i]n examining a claim of tortious interference, a court must examine the nature of the alleged culpable actions. Liability cannot be predicated on actions which are 'justified' or 'privileged.'" *See Local 472 of United Ass'n of Journeymen v. Ga. Power Co.,* 684 F.2d 721, 727 (11th Cir.1982).

Thus, this claim is also inextricably intertwined with the CBA; the Court must apply or interpret provisions of the CBA to determine whether Defendants acted improperly, without privilege and maliciously. *See Bartholomew v. AGL Res., Inc.,* 361 F.3d 1333, 1340 (11th Cir.2004) (determining whether employer's pre-termination statements were "improper" and "without privilege" required consideration of CBA; consequently, claim for tortious interference with business relations was preempted by LMRA); *Pilkington v. United Airlines,* 112 F.3d 1532, 1540 (11th Cir.1997) (tortious-interference claim preempted where assessment of union's actions could only be done by interpreting CBAs, which may have allowed some of union's conduct); *see also Atwater,* 626 F.3d at 1180 (negligence claim preempted because duties underlying claim arose directly from CBA).

Accordingly, the Court will also grant Defendants' motion to dismiss this claim as preempted.

### 3. Compelling–State–Interest Exception

Plaintiff contends that even if its claims are preempted by the LMRA, the Court should apply the compelling-state-interest exception. Relying on *Linn v. United Plant Guard Workers,* 383 U.S. 53, 55, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), which

applied the exception to a state-law malicious libel claim, Plaintiff argues that its claims, coupled with Defendants' discriminatory treatment of its employees, create an "overriding state interest" that the LMRA cannot preempt. The Court disagrees.

*Linn* is limited to whether the *NLRA* "supersedes state law with respect to libels published during labor disputes." *Id.* at 57, 86 S.Ct. 657. Plaintiff does not allege that Defendants maliciously libeled it during a labor dispute; thus, *Linn* is inapposite. Plaintiff has also failed to persuasively argue that *Linn's* reasoning should be extended to the context of this case and to the LMRA. And Plaintiff has not provided any other cases to support its contention that Georgia has a compelling interest in its law being applied to Plaintiff's claims. As a result, the compelling state-interest exception does not save Plaintiff's claims.

In conclusion, the LMRA preempts Plaintiff's claims for trespass and tortious interference with business relations, and the Court will grant Defendants' motion to dismiss on this basis.

### III. Conduct Protected or Prohibited by the NLRA

 Defendants contend that the NRLA also preempts Plaintiff's claims. They argue that state-law claims, such as Plaintiff's, are not preempted only if the activity sued upon is of "peripheral concern" to the NRLA or touches upon "deeply rooted" local interests. Defendants assert that the conduct challenged by Plaintiff does not satisfy either preemption exception. Defendants focus on Plaintiff's allegation in its own complaint

that Defendants' conduct violated the NRLA. Defendants also argue that Plaintiff's claims distill to an allegation that Defendants forced and threatened Plaintiff to recognize the union, which if true is more than a "peripheral concern" to the NRLA and should first be addressed by the National Labor Relations Board ("NLRB"). Thus, Defendants conclude that the NLRA required Plaintiff to bring its claims before the NRLB, and that its failure to do so requires dismissal of its claims.

 Under the NRLA, preemption applies when it is "clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8." *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Preemption also applies even when an activity is "arguably subject" to §§ 7 and 8 of the NRLA because "courts are not primary tribunals to adjudicate such issues." *Id.* "It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *Id.* at 244–45, 79 S.Ct. 773.

Here, Plaintiff's claims challenge Defendants' actions after the CBA was signed, specifically, Defendants' entering Plaintiff's movie set, doing so during working hours, distracting employees from their work, and distributing pay to some employees but not all.[2] This activity may be fairly assumed to fall within, or arguably subject to, the purview of the NRLA.

Section 7 of the NRLA details employees' rights to form, join or assist labor unions, to engage in union activities, and to

**2.** Although Plaintiff mentions Defendants' coercive conduct that preceded execution of and allegedly forced Plaintiff to sign the CBA, Plaintiff's claims are limited to Defendants' actions on the day Akins and another union representative entered Plaintiff's movie set. Even if Plaintiff's claims are ultimately about the validity of the CBA because Plaintiff was forced to sign it, its claims are still preempted by the NRLA.

refrain from any such activities, 29 U.S.C. § 157; section 8 details what constitutes unfair labor practices by employers, unions, and the unions' agents, 29 U.S.C. § 158. Plaintiff's claims essentially allege that Defendants impermissibly entered its property with the purpose of treating union and non-union employees differently, actions that arguably violate §§ 7 and 8.

Relying on *Linn* and *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), Plaintiff contends that its claims fall within an exception to preemption. It argues that "the activity sued upon is of only peripheral concern to the NRLA" because Defendants' "discriminatory actions" are "so deeply rooted in local feeling and responsibility." The Court disagrees.

■ Preemption does not apply if the state has "a substantial interest in regulating the challenged conduct and its regulation would not threaten undue interference with the federal regulatory scheme." *Carter v. Sheet Metal Workers' Int'l Ass'n,* 724 F.2d 1472, 1473 n. 2 (11th Cir.1984). *Linn* applied the exception where the plaintiff alleged a claim for malicious libel and *Farmer* for intentional infliction of emotional distress.

In weighing the states' interests, the Supreme Court discussed the states' substantial interest in protecting their citizens from damage to reputation in *Linn* and emotional distress caused by outrageous conduct in *Farmer.* In this case, Defendants' actions are not malicious or outrageous and do not otherwise implicate the state's interest in "protecting the health and well-being of its citizens." *Farmer,* 430 U.S. at 303, 97 S.Ct. 1056. Plaintiff has not otherwise convinced this Court that Defendants' conduct is of the same degree of offensiveness as the conduct in *Linn* and *Farmer.*

Also, in both *Linn* and *Farmer* the Supreme Court found that the state-law claims could be decided wholly apart from the activity that fell within the purview of the NRLA. *See Farmer,* 430 U.S. at 298–99, 97 S.Ct. 1056 (discussing *Linn*'s finding that NRLB's "unfair labor practice proceeding would focus only on whether the statements were misleading or coercive; whether the statements also were defamatory would be of no relevance to the Board's performance of its functions"); *id.* at 304, 97 S.Ct. 1056 (finding in *Farmer* that "state-court tort action can be adjudicated without resolution of the 'merits' of the underlying labor dispute").

In making this finding in *Farmer,* the Court noted that "Union discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based." *Id.* at 305, 97 S.Ct. 1056. Consequently, when it does, "concurrent state-court jurisdiction cannot be permitted" because there is a "realistic threat of interference with the federal regulatory scheme." *Id.* Here, the union's allegedly outrageous conduct is its discriminatory conduct; therefore, this conduct serves as the basis for Plaintiff's tort claims and would be relevant to the NRLB's decision. And, as discussed above, resolution of Plaintiff's claims will require interpretation of the CBA. Thus, unlike the claims in *Linn* and *Farmer,* Plaintiff's claims do pose a realistic threat to the federal scheme and cannot be resolved independently of the conduct that the NRLB would address.

Consequently, the Court finds that Plaintiff's claims are also preempted by the NRLA and will grant the motion to dismiss on this basis as well.

## IV. Claim for Injunctive Relief

In this claim, Plaintiff seeks an injunction that prohibits Defendants from entering its property and interfering with its workers and contractors. As Plaintiff's

claims are preempted by federal labor law, it cannot show that it will succeed on the merits of its state-law claims. Thus, this claim fails, and the Court will dismiss it.

### V. Claims Against Akins

Defendants also argue that because Plaintiff's claims are governed by the LMRA, which forbids suits against individual union officers, Akins should be dropped as a party. Because the Court finds that Plaintiff's claims are preempted by the LMRA and the NRLA, and Plaintiff has not sought leave to replead its claims under the LMRA, the Court need not address this argument.

### VI. Conclusion

Defendants' motion to dismiss [4] is GRANTED. The Clerk is DIRECTED to close the case.