**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 16, 2015

# In the Court of Appeals of Georgia

A15A0563. TURRELL et al. v. McNEEL et al.

McMILLIAN, Judge.

A jury returned a defense verdict in a medical malpractice case brought by June and Robert Turrell against Michael J. McNeel, M.D., and his practice, Marietta Plastic Surgery, P.C. Following the denial of their motion for new trial, the Turrells appeal, arguing that the trial court committed errors mid-trial when the Turrells moved for sanctions, and thereafter erred in denying their motions for new trial, to strike liability defenses, and to disqualify defense counsel. Because the trial court was correct in concluding that the Turrells waived their right to seek sanctions against the defendants, we find no error and affirm.

Following a jury trial, we view the evidence in the light most favorable to the verdict.[1] So viewed, the evidence showed that Mrs. Turrell underwent a gastric bypass procedure in 2004 and lost a great deal of weight, which left her with loose skin. In January 2007, she consulted Dr. McNeel and decided to undergo a "circumferential body lift" to remove excess skin and reshape her midsection immediately following a scheduled hysterectomy. The surgeries took place on March 2, 2007. The hysterectomy took a little more than two hours, and the body lift took another seven hours and 45 minutes, during which Dr. McNeel removed eight pounds of flesh from Mrs. Turrell's body. Mrs. Turrell underwent a transfusion the following day and was discharged from the hospital on March 6, 2007.

An area of necrotic tissue later developed on Mrs. Turrell's left buttock, which eventually required several additional procedures and surgeries to correct over the course of the next few months. Thereafter, she sued Dr. McNeel and his practice for medical malpractice, contending that he failed to use proper surgical techniques and

---

[1] *Clements v. Weaver*, 301 Ga. App. 430, 430 (687 SE2d 602) (2009).

failed to identify and properly treat her infected wounds. Mr. Turrell sued for loss of consortium.[2]

The case was tried to a jury beginning on September 30, 2013. After the Turrells completed the presentation of their evidence, the trial recessed until the next morning. When the parties and counsel returned to court the next morning on the fourth day of trial, the Turrells represented to the trial court that defense counsel had contacted Mrs. Turrell's treating wound care nurse in violation of the court's Qualified Protective Order ("QPO") that directed defense counsel to give notice to plaintiffs' counsel of their intent to speak with any of Mrs. Turrell's healthcare providers. The Turrells also complained that defense counsel had given the wound care nurse a number of documents "to review to help the defense and prepare to testify in this case," in violation of the federal Health Insurance Portability and Accountability Act (HIPAA).[3] Plaintiffs' counsel offered no explanation as to why

---

[2] The Turrells' original complaint was filed on February 27, 2009 and voluntarily dismissed without prejudice on February 23, 2012. The renewal complaint was filed on February 29, 2012.

[3] Protected health information is defined within HIPAA as "individually identifiable health information … that is: (i) [t]ransmitted by electronic media; (ii) [m]aintained in electronic media; or (iii) [t]ransmitted or maintained in any other form or medium." 45 CFR § 160.103.

they waited until the fourth day of trial to bring these allegations to the court's attention when it appeared that they may have discovered this issue prior to trial.[4]

Defense counsel, who had received no prior notice of plaintiffs' counsel's concerns, explained that while she had previously met with the wound care nurse two years before, along with plaintiffs' counsel, in accordance with the QPO, since that time the defense had

> had no contact with her, except we called and advised her that we would be interested in calling her at trial. And she said to us that she hadn't looked at this information in a while, and will we send her the medical records so that she could review them in preparation, and we provided her the medical records. We've had no contact with her other than scheduling-type information: When would you be available to come to court? When would you like for me to be here? No discussion about the substance of her testimony at all.[5]

---

[4] Plaintiffs' counsel stated to the court that co-counsel personally met with the nurse a week before trial to discuss her testimony. And co-counsel's affidavit indicates that he spoke with the nurse on September 16, 2013 and again on September 26, 2013, four days prior to the start of trial, regarding her review of the medical records and potential testimony at trial.

[5] Defense counsel maintained throughout that providing Mrs. Turrell's hospital medical records did not violate the QPO.

Plaintiffs' counsel declared that the communications violated at least the spirit of the QPO because the defense did not inform the Turrells that they were providing documents to a treating healthcare provider to review in preparation for testifying, and they did not know what documents had been provided. The trial court agreed that contacting the wound care nurse without notifying plaintiffs' counsel was at least a technical violation of the QPO and asked what sanctions the plaintiffs sought. Plaintiffs' counsel requested that the defense be prevented from calling the wound care nurse as a witness.

As the defense did not intend to call the nurse until later that day or the next day, the trial court took the matter under advisement.[6] At that point, the jury returned to the courtroom, and Dr. McNeel began his testimony. During a break in the testimony, the trial court told the plaintiffs' attorneys,

---

[6] Plaintiffs' counsel then complained that another defense lawyer, Henry Green, had actually delivered the records to the nurse. When questioned by the trial court, defense counsel explained that she involved Green in the records transmission because when the nurse was originally contacted, her employer had procured Green's representation for the nurse. The previous meeting between defense counsel and the nurse took place at Green's office, with plaintiffs' counsel attending. Because of this prior representation, defense counsel stated, when she decided she might call the nurse as a witness at trial, she contacted Green first and asked him if she should continue to contact the nurse through him. Green asked defense counsel to send him the materials the nurse wanted to review, and he would forward them to her.

In order to make any ruling on your motion to exclude the witness for violation of the [Q]ualified [P]rotective [O]rder, the Court would have to have further information and [that] would, I guess, require discovery by the plaintiffs. So, at this point, you can pursue a proffer of [the wound care nurse], of Mr. Green – e-mails, correspondence, whatever you want to obtain, in order to determine whether or not there was a violation of the Qualified Protective Order through the cooperation or intervention of another lawyer. Y'all can think about that and talk to me when I come back on.

Dr. McNeel's direct examination resumed, defense counsel finished her direct examination, and Dr. McNeel's cross-examination began. The court then recessed for lunch, and when counsel, the parties, and the trial court returned, plaintiffs' counsel stated that defense counsel had informed him she would not be calling the wound care nurse to testify. Nonetheless, the plaintiffs announced their intent to seek an even more extreme sanction and moved the trial court to strike the defendants' answer based on their allegations that (1) defendants violated the terms of the QPO, as previously discussed; (2) Mr. Green influenced the wound care nurse, who told plaintiffs' counsel that she was reticent to testify and "felt like she was in between a rock and a hard spot"; and (3) defense counsel made material misrepresentations to

6

the court regarding the delivery of the records to the nurse.[7] Plaintiffs' counsel further stated that the Turrells intended to move for a directed verdict on liability after the evidence concluded and asked the court to withhold ruling on the sanctions motion pending the jury verdict.

Defense counsel responded that she had no notice that the plaintiffs were contemplating a motion to strike the answer, despite having conferred with them several times about whether she would call the wound care nurse or not. The court then found that defense counsel was entitled to notice and an opportunity for a full hearing on the sanctions issue. However, the court determined that scheduling a sanctions hearing mid-trial was impractical because there was a chance that the jury would find out about the sanctions hearing, which the trial court believed might "destroy our case." Although plaintiffs' counsel continued to argue that the court had the authority to address misfeasance in its presence rather than being required to "blow the trial up and set a hearing 30 days out," the trial court observed that the sanctions sought were severe and that the Turrells had to either drop the matter or

---

[7] As proof of harm, plaintiffs alleged that Mrs. Turrell's HIPAA rights had been violated and a witness had been "neutralized that might otherwise have testified in this case."

pursue it, and that if they wanted to pursue it, then the court could not go forward with the trial.

Plaintiffs initially rejected both options and instead moved for what was in essence a continuance until the next morning to further "refine" their motion for an "appropriate sanction." The trial court denied a continuance but allowed counsel to again confer with their clients to reach a permanent decision, rejecting plaintiffs' equivocal request to reserve ruling on their motion to strike defendants' answer until after the jury reached its verdict. After so conferring, plaintiffs' counsel agreed to "permanently withdraw" the motion and proceed with the trial.

The defense continued to present its case, and the plaintiffs offered some evidence in rebuttal. After the jury returned a defense verdict and the trial court entered judgment, the Turrells filed a motion for new trial, a motion for sanctions, and a motion to disqualify defense counsel. The trial court denied the motions, concluding that the Turrells "waived the right to pursue a remedy for defense counsel's alleged misconduct" for violating the QPO and improperly influencing a witness. The court noted that it had offered the Turrells the "full opportunity" to address the allegations of misconduct and would have declared a mistrial, set the matter for a hearing, allowed discovery, and considered sanctions if the evidence warranted them, and had

8

expressly put the Turrells on notice that they would waive the right to pursue any remedy for the alleged misconduct if they chose to proceed with trial.[8] And because of its waiver finding, the trial court declined to address the Turrells' remaining arguments related to the sanctions motion.

On appeal, the Turrells contend that the trial court erred in failing to grant them a reasonable amount of time to respond to the defendants' misconduct, in forcing them to choose between a mistrial or waiving the motion for sanctions, in ruling on the issue after they withdrew their motion, and in denying their motions for new trial, for sanctions, and to disqualify defense counsel.

1. We will first address the Turrells' contention that the trial court erred in failing to grant a continuance. "A motion for continuance of a trial is properly addressed to the sound legal discretion of a trial judge, who is in control of the management of the case in court. The exercise of that discretion will not be disturbed by the appellate courts unless the discretion is manifestly abused." (Citation and footnote omitted.) *Davis v. Osinuga*, 330 Ga. App. 278, 279 (767 SE2d 37) (2014).

---

[8] In response to the Turrells' argument that they learned of new evidence regarding the extent and nature of defense counsel's conduct and communication with the wound care nurse, the trial court found that the Turrells "had sufficient information during (and perhaps even prior to) trial in order to seek the investigation of, and a remedy for, defense counsel's alleged misconduct."

9

Based on the facts and circumstances of this case, where plaintiffs' counsel acknowledged they first became concerned about allegedly improper communications in the week *prior* to trial, we find that the trial court did not manifestly abuse its discretion in denying the plaintiffs' request for a continuance to further consider their motion for sanctions.

2. The Turrells also argue that the trial court erred in forcing them to choose between a mistrial or waiver of their sanctions motion. Generally, "[a] trial court is granted broad authority both to control the course of a trial and to manage discovery disputes, including the imposition of discovery sanctions. We will not interfere with the trial court's exercise of that discretion absent a showing of clear abuse." (Citations omitted). *LN West Paces Ferry Assocs., LLC v. McDonald*, 306 Ga. App. 641, 646 (2) (a) (703 SE2d 85) (2010). However, pretermitting whether the trial court abused its discretion in requiring the plaintiffs to choose to go forward with the sanctions motion and have the case mistried or permanently forego moving for sanctions, we find that plaintiffs' counsel waived any further objection at the time the choice was made.

Rather than stating any continuing objection on the record to what the plaintiffs now call a "Hobson's choice," plaintiffs' counsel, after being given some time to

confer with their clients off the record, responded to the trial court's direction by conceding:

> Your Honor, based on the defendants' representations that they are no longer going to call [the wound care nurse] to testify, we would permanently withdraw our motion for sanctions on this issue that we've been talking about, and we're ready to proceed.

It is clear that plaintiffs elected to proceed to a jury verdict rather than face a mistrial and a separate hearing on the alleged misconduct. However, after the jury rendered a defense verdict, plaintiffs nonetheless attempted to renew the very motion they agreed to permanently withdraw. It is axiomatic that "[a] party cannot complain of error created by his own legal strategy, trial procedure or conduct." (Citations omitted.) *LN West Paces Ferry Assocs., LLC*, 306 Ga. App. at 648-649 (3) (a). And by failing to object to the choice put to them at the time it was made, plaintiffs have waived this argument. Id. at 649 (3) (c).

3. In light of this waiver, plaintiffs' remaining enumerations of error are moot.

*Judgment affirmed. Ray, J., concurs. Barnes, P. J., concurs specially.*

A15A0563. TURRELL et al. v. McNEEL et al.

BARNES, Presiding Judge, concurring specially.

While I agree with the majority that the Turrells waived their right to seek sanctions against the defendants in this medical malpractice case, I would find that they did so only because they did not renew their objection when they were presented with the option of doing so or accepting a mistrial. Because I do not agree with all that is said, I concur specially.[1]

First, the plaintiffs in this case did not seek a continuance of the trial at any time. What they sought, reasonably, was for the trial court to defer ruling on their motion for sanctions until the following morning. This request was made after lunch

---

[1] Because I do not agree with all that is said, this opinion is physical precedent only. Court of Appeals Rule 33 (a).

on the fourth day of a five-day trial, after the plaintiffs had presented their evidence and rested. The defendants objected to the request to defer ruling because they did not want to be put to the expense of presenting a few hours of evidence if the trial court was going to rule against them, even though the plaintiff had just gone to the considerable expense of presenting several days' worth of evidence.

Further, when the plaintiffs asked the trial court to defer ruling until the next morning, they did not know the extent of any efforts by the defendants to influence the treating wound care nurse. After further colloquy, the plaintiffs withdrew their motion for sanctions, but the defendants protested the withdrawal and wanted the matter resolved immediately. At that point the trial court gave plaintiffs' counsel ten minutes to confer with his client and then "either proceed on the motion or you withdraw it permanently." The trial court had made it abundantly clear early in the trial that once it ruled, she wanted to hear no further response from the attorneys, and upon his return, counsel chose the lesser of the two evils and again withdrew the motion for sanctions.

The trial court essentially required the plaintiffs to guess whether the defendants had done more than simply pass the plaintiff's medical records through a defense attorney that the hospital had previously hired to represent the nurse, rather

2

like making them choose to go all in or fold during a game of five-card stud when they had only seen two of their cards.

And the context of the sanctions motion as set out in the majority is incomplete. First, trial counsel had an agreement that they would disclose to opposing counsel who might be coming the next day, an agreement memorialized in the pretrial order. The defendants failed to comply with that agreement. The defense had listed their expert nurse and the treating wound care nurse as may-call witnesses. In opening, plaintiffs referred to anticipated testimony of the expert nurse, who in deposition disputed Dr. McNeel's opinion that pictures of Mrs. Turrell's wounds showed no signs of infection, and of the wound care nurse, who also saw signs of infection where Dr. McNeel saw none. During the plaintiffs' cross-examination of Dr. McNeel on day three of the trial, however, defense counsel objected to a question about the opinion of his hired expert nurse on the ground that the expert was not going to testify. Plaintiffs' counsel responded that he did not know the defense was not going to call their expert although he had asked who they would call. The court said to defense counsel, "If you weren't going to call [your expert], you should put them on notice you weren't going to call her," and defense counsel replied, "Well, I just have." The trial court pointed out that because of the "inappropriate" timing of the notice,

3

the plaintiffs were unable to call the expert themselves, but defense counsel responded, "Well, I'm not required to put [plaintiffs' counsel] on notice, at any time[;] if I choose not to call a witness that's on the witness list, I don't have to."

At the end of the day, defense counsel notified the plaintiffs that they might call the wound care nurse the next day. Before trial began the next morning, plaintiffs' counsel told the court that he believed that the defense had contacted the wound care nurse ex parte in violation of the QPO and had given her medical records in violation of HIPAA. After discussion, the trial court took the matter under advisement, but when plaintiffs' counsel stated his understanding that another medical malpractice lawyer, Henry Green, had actually delivered the records to the nurse, the trial court questioned defense counsel further. Counsel explained that she involved Green in the transmission process because the hospital had previously procured him to represent the nurse.

The trial court responded that something was "a little unusual," and noted that "Mr. Green has been known to communicate with parties and witnesses, and others

4

related to cases, inappropriately, according to some judges. So that really puts a little stick in the wheel there."[2]

The Turrells did not waive their right to bring a motion for sanctions by declining the trial court's offer of an immediate mistrial. They waived it by failing to make a contemporaneous objection when they announced their choice. A very long line of Georgia appellant cases has define waiver as "a *voluntary* relinquishment of some known right, benefit or advantage, which, except for such waiver, the party otherwise might have enjoyed." (Citations and punctuation omitted; emphasis supplied.) *Floyd v. Floyd*, 291 Ga. 605, 606, n. 3 (732 SE2d 258) (2012). Further, waiver is a unilateral action, *Mail & Media v. Rotenberry*, 213 Ga. App. 826, 832 (2) (446 SE2d 517) (1994), not an action taken in response to an order to choose on of two possible courses of action. In this case, requiring the plaintiffs to choose between an immediate mistrial or the permanent loss of their ability to move for sanctions does not result in a "voluntary relinquishment" of their right to seek sanctions when they opt to continue the trial. As the Turrells point out, the grant of a mistrial on the fourth

---

[2]See *Wellstar Health Systems v. Kemp*, 324 Ga. App. 629, 637 (1) (b) (751 SE2d 445) (2013) (affirming disqualification of Green and his firm for pressuring a physician "directly or indirectly when they discovered that he intended to testify as an expert for [the plaintiff]," which resulted in the physician declining to testify).

day of trial, after they had completed the presentation of their evidence, would have disadvantaged only them, and at that point, they did not know exactly what the defendants had done or why the wound care nurse had become reluctant to testify. Although the trial court found that the Turrells had sufficient information during trial to investigate any alleged misconduct, the court declined to give them until the following morning to look into the issue, but required them to choose after ten minutes of consultation. Agreeing to a mistrial at that point would have been a tremendous gamble in the face of incomplete information.

While the defendants argue that mistrial or waiver were the only proper options the trial court could have offered, the trial court had a third option, which was to make no ruling at all. The Turrells had withdrawn their motion for sanctions, and therefore no motion was pending that required a ruling, much less a preemptive ruling to forestall any future motion for sanctions regardless of any information the Turrells subsequently uncovered about the defendants' actions. "There is neither reason nor precedent for the proposition that when in a legal proceeding a motion has been submitted to the court and subsequently withdrawn as formally as it was made, the question raised by the motion can be afterwards considered, unless the motion shall

6

have been subsequently renewed." *Howard v. State*, 115 Ga. 244, 250-251 (41 SE 654) (1902).

To quote our Supreme Court in a discovery violation case, a trial "is not supposed to be a game in which the parties maneuver to hide the truth about relevant facts, and when a party does intentionally mislead its adversary, it bears the risk that the truth will later be revealed[.]" *Ford Motor Co. v. Conley*, 294 Ga. 530, 559 (757 SE2d 20 (2014). In this case, however, we will never know why the wound care nurse became reluctant to testify.

For these reasons, I do not agree with the majority's analysis of this appeal and its conclusion that the Turrells waived the issue by making the choice forced upon them. But because the Turrells did not renew their objection or make a continuing objection, I agree that the issue was waived on appeal.