**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 20, 2021**

# In the Court of Appeals of Georgia

A21A0053. ROSS-STUBBLEFIELD et al. v. WEAKLAND et al.

MARKLE, Judge.

Helen Ross-Stubblefield and her husband (collectively "the plaintiffs") brought a medical malpractice suit against Helen's oncologist, Laura Weakland, and Weakland's medical practice, Georgia Cancer Specialists (collectively "the defendants"), alleging that Weakland failed to follow up on abnormal test results, and that this failure led to a delay in the diagnosis and treatment of Helen's cancer. A jury found in favor of the defendants, and the plaintiffs now appeal, arguing that the trial court erred in admitting medical records of a non-party treating physician because those records were altered after the litigation began, were made with an intent to

conceal relevant facts, in violation of OCGA § 16-10-94.1, and were not properly certified.[1] Because we conclude that any error was harmless, we affirm.

Viewing the evidence in the light most favorable to the verdict, *Turrell v. McNeel*, 333 Ga. App. 611, 612 (774 SE2d 274) (2015), the record shows that in 2012, Helen was diagnosed with stage III breast cancer. Dr. Rogsbert Phillips performed a mastectomy, and Helen underwent chemotherapy with Dr. Weakland, and radiation with another doctor. Helen responded well to the treatment and, once it was completed, the plaintiffs began to discuss reconstructive surgery. In September 2013, per Dr. Phillips's orders, Helen obtained a PET scan and an MRI in preparation for reconstructive surgery. The PET scan report showed a nodule behind the sternum, and the radiologist recommended additional imaging. The plaintiffs met with Dr. Phillips and discussed the results of the scans, but apparently were not told that the scan was abnormal.

---

[1] The plaintiffs also named a physician assistant as a defendant, but the trial court granted a directed verdict as to the claims against her. In addition, the plaintiffs initially alleged simple negligence, fraud, and breach of fiduciary duty. The trial court granted summary judgment in Dr. Weakland's favor on the simple negligence and breach of fiduciary duty claims, but denied it as to the fraud claim. The plaintiffs do not allege any error with respect to these rulings.

At Helen's next appointment the following month, Dr. Weakland had reviewed the reports and indicated that there was no evidence of disease. She also noted in the record that she would follow up on the PET and MRI results. Thereafter, Dr. Weakland assumed that Dr. Phillips had reviewed the scans, and that the MRI results clarified that there was nothing concerning about the results of the PET scan.

Unfortunately, Helen's cancer had returned and was not discovered until Dr. Phillips ordered another set of scans in early 2015. At that time, Helen was diagnosed with stage IV cancer that is incurable.

The plaintiffs' claims of negligence and fraud stem from Dr. Weakland's failure to look into the results of the 2013 PET scan and her subsequent notations in Helen's medical record that there was no evidence of disease at that time. At trial, the plaintiffs sought to exclude Dr. Phillips's medical records, which included an entry from 2015 and an altered version of that same note.[2] In the original, Dr. Phillips wrote that Helen was "still thinking about reconstruction. Wants a complete staging prior to surgery." After the litigation began, Dr. Phillips changed that entry to read: "Still

---

[2] The plaintiffs also filed suit against Dr. Phillips in a separate action, and they unsuccessfully challenged the admissibility of these altered records in that suit as well. In a deposition given in that case, Dr. Phillips admitted changing the note, explaining that she had "amended" her earlier entry. Dr. Phillips did not testify in Dr. Weakland's trial.

thinking about reconstruction suregry [sic]. She has not been consistent in keeping her appointment. The office has been trying to get patient in fot [sic] a follow up CT-Pet scan. Denies any symptoms. Last time seen in office was almost 8 months ago." The plaintiffs moved in limine to exclude these records on the grounds that they had been altered after litigation began and were not made contemporaneously with the examination; they were not properly certified; and they violated OCGA § 16-10-94.1, which criminalizes the falsification of medical records.[3] In response, Dr. Weakland submitted a certification of the records. The trial court denied the motion to exclude the records. The plaintiffs then referred to the altered note in opening statements, asserting that Dr. Weakland would likely try to blame Helen for the delay in treatment, consistent with Dr. Phillips's altered note.

The plaintiffs presented expert testimony from an oncologist who opined that Dr. Weakland breached the standard of care by failing to follow up with the 2013 PET scan results and for noting in Helen's chart that there was no evidence of disease when the PET scan was, in fact, abnormal. This expert witness also criticized Dr. Phillips's decision to alter the record, and explained that the note regarding Helen's

---

[3] In opposing the motion in limine, the defendants asserted that they could remove those two altered lines. But they also argued that the entire record was admissible.

noncompliance was inconsistent with the rest of the medical records. The plaintiffs also presented testimony from a surgical oncologist, who testified that it was improper for Dr. Weakland to note in the record that there was no evidence of disease in light of the abnormal PET scan results. He opined that the delay in treatment due to the failure to follow up on the abnormal scan caused Helen to need extensive surgery and reduced her life expectancy.

Both Helen and her husband testified that Helen had been diligent in her treatment, that Dr. Weakland never told them the results of the 2013 PET scan, and that she should have told them of the result so that they could have pursued further treatment.

Dr. Weakland testified that she had reviewed the PET scan report, but that she assumed that the doctor who ordered the test had investigated the abnormal results, and that the MRI had confirmed that there was no reason for concern. She stated that Helen was well-educated about her condition and treatment, and that Helen informed her that the scans were clear. Dr. Weakland explained that she wrote no evidence of disease in the chart because, after reviewing the report, she did not think the PET scan showed an active cancer, as it was not unusual for a scan to show some abnormality after a patient had completed surgery and radiation. Dr. Weakland further explained

5

that there was only a very small chance of recurrence so soon after treatment based on her experience treating cancer patients, as well as Helen's lab work, and the physical examination.

In her defense, Dr. Weakland proffered testimony of an oncologist who opined that she adhered to the standard of care because routine imaging was not necessary where the patient did not complain of new symptoms, and it is not one physician's role to oversee and monitor another doctor's orders. The defense expert stated that the abnormal PET scan report did not trigger any obligation of Dr. Weakland because it was Dr. Phillips's responsibility to follow up on the scans she ordered, and that doctors would not have expected the cancer to recur less than a year after completing radiation and chemotherapy. Dr. Weakland also proffered the expert testimony of another medical oncologist who opined that she met the standard of care because the guidelines for treatment of breast cancer did not call for scans after treatment, as scans were unreliable and would expose the patient to additional radiation. The expert explained that this type of cancer is often incurable when it recurs. He further reiterated that it was the job of the ordering physician to follow up on test results and further images, and it was within the standard of care for Dr. Weakland to assume that Dr. Phillips had done so.

In closing argument, the plaintiffs argued that the case was about Dr. Weakland's failure to follow up on the abnormal scan or to notify Helen of the results. In their closing, the defendants pointed the finger at Dr. Phillips, arguing that the failure to diagnose the recurrence was her error. Notably, at no time did the defendants argue that Helen had any role in the failure to obtain treatment; nor did they argue that Helen was noncompliant with her care. The jury ultimately found in favor of the defendants, and the plaintiffs now appeal.

In interrelated enumerations of error, the plaintiffs argue that the trial court erred by admitting Dr. Phillips's records because (1) those records were altered after the lawsuit was filed; (2) the records do not comport with OCGA § 24-8-803 (6) because they were not made at or near the time of the act; (3) the records had been altered, in violation of OCGA § 16-10-94.1; and (4) the records were not properly certified under OCGA § 24-9-902 (11). They contend that the admission of this evidence was not harmless. After a thorough review of the record, we conclude that the error, if any, was harmless.

"A trial court's decision to admit evidence as an exception to the hearsay rule will not be disturbed absent an abuse of discretion." (Citation omitted.) *Goldsmith v. Peterson*, 307 Ga. App. 26, 31 (3) (703 SE2d 694) (2010). An abuse of discretion

7

"occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation omitted.) *Chua v. Johnson*, 336 Ga. App. 298, 299 (784 SE2d 449) (2016). However, to be reversible error, it is not enough that the trial court erred; the plaintiffs also must show that the error had an effect on the outcome of the proceedings. "Erroneous evidentiary rulings are subject to the harmless error doctrine, meaning we may not reverse a judgment because of such an error unless refusal to take such action appears to the court inconsistent with substantial justice." (Citations and punctuation omitted.) *Hillman v. ALDI, Inc.*, 349 Ga. App. 432, 441 (1) (b) (825 SE2d 870) (2019); see also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"); OCGA § 9-11-61 ("No error in either the admission or the exclusion of evidence . . . is ground for . . . setting aside a verdict . . . , unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). When we consider whether an error was harmless, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done

8

so." (Citation omitted.) *Haskins v. Ga. Neurosurgical Institute, P.C.*, 355 Ga. App. 781, 783 (2) (845 SE2d 770) (2020).

Here, pretermitting whether it was error to admit Dr. Phillips's altered medical records, our review shows that it is highly probable that the evidence did not contribute to the verdict.[4] To make out their case, the plaintiffs had to establish both that Dr. Weakland breached the applicable standard of care, and that this breach was the proximate cause of Helen's injuries. *Swint v. Mae*, 340 Ga. App. 480, 482 (1) (798 SE2d 23) (2017). There was expert testimony on both sides regarding the standard of care, and it was the jury's role to weigh this testimony. But Dr. Phillips's altered medical record alleging that Helen was noncompliant has no bearing on the plaintiffs' claims that Dr. Weakland breached the standard of care by failing to follow up on the abnormal PET scan and noting in the record that there was no evidence of disease. Id.

---

[4] The defendants argue that the plaintiffs waived this issue by refusing their offer to withdraw the record *after* the trial court had ruled it admissible, and *after* the plaintiffs had already mentioned it in opening statements. We do not agree. Under our Evidence Code, "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection." See OCGA § 24-1-103 (a). Having raised their objection and obtained a ruling, there was nothing else the plaintiffs needed to do to preserve their challenge. See *Terry v. State*, __ Ga. App. __ (1) (854 SE2d 366, 369 (1)) (2021). We thus conclude that the plaintiffs did not waive their challenge to the admission of Dr. Phillips's records.

9

at 482 (1) (plaintiff must show that doctor's breach of the standard of care was the cause of the injury); cf. *Ferro v. Boswell*, 242 Ga. App. 634, 635 (1) (530 SE2d 533) (2000) (evidence showed doctor did not violate standard of care, and plaintiff failed to establish causation where patient's noncompliance could have caused injury). Indeed, nothing in Dr. Phillips's notes involved the applicable standard of care in this case, and Dr. Weakland's testimony confirmed that Helen was involved and well-informed of her treatment needs. See *Snider v. Basilio*, 281 Ga. 261, 263-264 (637 SE2d 40) (2006) (no error in excluding evidence that nurse failed licensing examination because such evidence was irrelevant to whether doctor breached standard of care); *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 678 (4) (278 SE2d 100) (1981) (error in admitting medical records was harmless because they were irrelevant to the issue in the case); compare *Moore v. WellStar Health System*, 349 Ga. App. 834, 845-846 (5) (824 SE2d 787) (2019) (erroneous admission of hearsay evidence was not harmless where it was improperly used to impeach plaintiff's expert witness on core issue of the standard of care); *Thomas v. The Emory Clinic, Inc.*, 321 Ga. App. 457, 458 (1), 460 (1) (d) (739 SE2d 138) (2013) (physical precedent only) (improperly admitted evidence was not harmless when it related to

a core issue in the case, the witnesses mentioned the evidence repeatedly, and the other evidence was conflicting).

Although the plaintiffs argue that the error was not harmless because the records constitute the only evidence that Helen allegedly was non-compliant with her medical care; the defense experts bolstered Dr. Phillips's credibility; and defense counsel called the records "the most important records in the case," we cannot agree.[5] Helen's alleged noncompliance and Dr. Phillips's credibility were not the core issues before the jury. Importantly, the defendants never argued that Helen's noncompliance was the cause of the delay in treatment. Instead, they placed the blame on Dr. Phillips's failure to follow up concerning the abnormal scan results. Moreover, the plaintiffs were able to argue to the jury that Dr. Phillips's records were unreliable and had been altered after litigation began. As such, the plaintiffs cannot show they were harmed by the admission of Dr. Phillips's altered record. See *Snider*, 281 Ga. at 263-264; see also *Griffin v. Greene County Hosp. Auth.*, 260 Ga. App. 122, 123 (2) (578 SE2d 913) (2003) (physical precedent only) (exclusion of evidence harmless where

---

[5] One of the defendants' experts referred to Dr. Phillips's altered record indicating that she had ordered a repeat scan and Helen had not followed up. But this same expert testified that it was not Dr. Weakland's responsibility to ensure further review of the scan results. In any event, none of the experts opined that Helen's alleged delay was the cause of her prognosis.

11

evidence had no probative value to the issues); *Pembrook Mgmt.*, 157 Ga. App. at 678

(4     Accordingly, when we review the record de novo and construe the evidence as

we would expect reasonable jurors to do, *Haskins*, 355 Ga. App. at 783 (2), we must

conclude that any error in admitting the altered records was harmless. We therefore

affirm the verdict in favor of the defendants.

   *Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*